UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

WILLIE J. HARRIS,

        Plaintiff,                       Case No. 1:24-cv-466

v.                                       Honorable Jane M. Beckering

JOHN DAVIDS et al.,

        Defendants.
_____/

## OPINION

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983 and the Americans with Disabilities Act (ADA), 42 U.S.C. §§ 12101 *et seq*. In a separate order, the Court granted Plaintiff leave to proceed *in forma pauperis*. Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim.

**Discussion**

I. **Factual Allegations**

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Ionia Correctional Facility (ICF) in Ionia, Ionia County, Michigan. The events about which he complains occurred at that facility. Plaintiff sues the following ICF staff in their individual and official capacities: Warden John Davids, Deputy Warden Unknown Vonn, Assistant Deputy Warden Unknown Dunigan, Case Worker Unknown Jansen, Case Worker Unknown Milastend, Unit Chief Unknown Maranka, and Prison Counselor Davis Santiago.

Plaintiff alleges that, on February 8, 2024, Plaintiff received 10 days of confinement in segregation and 30 days' loss of privileges for "alcohol substance and incendiary device." (Compl., ECF No. 1, PageID.3.) Because Plaintiff is considered to have a major mental illness disorder, Plaintiff remains in segregation through the START NOW Program (Start Program). (*Id.*) The Start Program "is designed to treat prisoners with behavioral disorders and associated behavioral problems." (ECF No. 1-1, PageID.13.)

Plaintiff claims that he is being denied privileges that the Start Program would allow "at some point," including a television, food items from the prison store, a music player, the ability to obtain a Securepak, a job, access to the law library, J-Pay machine, and freedom from handcuffs, access to a razor for shaving, and 5-7 weekly showers. (ECF No. 1, PageID.3.) Plaintiff identifies Defendants Davids, Dunigan, Vonn, Jansen, Maranka, Milastend, and Santiago "as the body of [the security classification committee]," responsible for placing Plaintiff into the Start Program. (*Id.*)

On March 8, 2024, Defendant Santiago told Plaintiff that he would make sure that Plaintiff stays in his segregation cell "due to a heated disagreement over the fact Plaintiff told Santiago he should not be in segregation." (*Id.*, PageID.4.)

2

On March 28, 2024, Plaintiff filed a grievance related to his placement in the Start Program. (ECF No. 1-1, PageID.10.) Plaintiff appealed the denial of his grievance on April 2, 2024. (*Id.*, PageID.9.) Plaintiff's appeal was denied by Defendant Davids on April 5, 2024. (*Id.*) Plaintiff's Step III appeal was likewise denied. (*Id.*, PageID.8.)

Plaintiff brings claims against Defendants for violation of Plaintiff's First, Eighth, and Fourteenth Amendment rights, as well as under the ADA. (ECF No. 1, PageID.2.) Plaintiff also contends that the Start Program is being used "as a means to steal money from the government." (*Id.*, PageID.4.) He seeks compensatory and punitive damages and injunctive and declaratory relief. (*Id.*, PageID.5.)

## II.     Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to

3

relief." *Id*. at 679 (quoting FED. R. CIV. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

### A.  Constitutional Claims

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994). Here, Plaintiff alleges that Defendants violated Plaintiff's First, Eighth, and Fourteenth Amendment rights.

#### 1.  First Amendment Claims

Plaintiff does not specify the nature of his First Amendment claims. However, Plaintiff alleges that Defendant Santiago told Plaintiff that he would ensure that Plaintiff remained in a segregation cell after a "heated disagreement" with Defendant Santiago over Plaintiff's belief that he should not be in segregation. (ECF No. 1, PageID.4.) Plaintiff also alleges that he filed a grievance related to his placement in segregation that was denied on appeal by Defendant Davids. (*Id.*) Finally, Plaintiff alleges that he is currently being denied access to the law library. (*Id.*, PageID.3.) The Court will therefore construe Plaintiff's First Amendment claims as two-fold: (a) unlawful retaliation and (b) interference with Plaintiff's access to the courts.

##### a.  Retaliation

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to

4

set forth a First Amendment retaliation claim, a plaintiff must establish three elements: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id*. Moreover, a plaintiff must be able to show that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

With respect to the first element of a First Amendment retaliation claim, an inmate has a right to file "non-frivolous" grievances against prison officials on his own behalf, whether written or oral. *Maben v. Thelen*, 887 F.3d 252, 265 (6th Cir. 2018); *Mack v. Warden Loretto FCI*, 839 F.3d 286, 298–99 (3d Cir. 2016). Here, Plaintiff references both a "heated disagreement" and a written grievance regarding his continued placement in segregation. At this stage in the proceedings, Plaintiff has alleged sufficient facts to suggest that he engaged in protected conduct for purposes of his First Amendment claims.

To establish the second element of a retaliation claim, a prisoner-plaintiff must show adverse action by a prison official sufficient to deter a person of ordinary firmness from exercising his constitutional rights. *Thaddeus-X*, 175 F.3d at 396. The adverseness inquiry is an objective one and does not depend on how a particular plaintiff reacted. The relevant question is whether the defendant's conduct is "capable of deterring a person of ordinary firmness"; the plaintiff need not show actual deterrence. *Bell v. Johnson*, 308 F.3d 594, 606 (6th Cir. 2002). To satisfy the third element of a retaliation claim, Plaintiff must allege facts that support an inference that the alleged adverse action was motivated by the protected conduct.

First, as against Defendant Davids, Plaintiff alleges only that Plaintiff filed a grievance and Defendant Davids denied Plaintiff's grievance. There is nothing inherent in Defendant Davids' denial to suggest that it would deter an ordinary person from again filing a grievance. Indeed, if denying a grievance were considered adverse action, every denial would give rise to liability for First Amendment retaliation. But the Sixth Circuit has foreclosed such an absurd result, stating that the denial of administrative grievances does not give rise to liability under § 1983. *Grinter v. Knight*, 532 F.3d 567, 576 (6th Cir. 2008). Many courts, including this one, have specifically held that the denial or refusal to process a grievance is not an adverse action. *See, e.g.*, *Cameron v. Gurnoe*, No. 2:19-cv-71, 2019 WL 2281333, at *4–5 (W.D. Mich. May 29, 2019) (citing cases); *Branch v. Houtz*, No. 1:16-cv-77, 2016 WL 737779, at *6 (W.D. Mich. Feb. 26, 2016); *Ross v. Westchester Cnty. Jail*, No. 10 Civ. 3937(DLC), 2012 WL 86467, at *8 (S.D.N.Y. Jan. 11, 2012) (the refusal to file a grievance is, without more, insufficient to constitute an adverse action); *Stone v. Curtin*, No. 1:11-cv-820, 2011 WL 3879505, at *4 (W.D. Mich. Aug. 31, 2011) (the failure to process a prison grievance would not deter a prisoner of ordinary firmness from exercising his right to file a grievance); *Green v. Caruso*, No. 1:10-cv-958, 2011 WL 1113392, at *10 (W.D. Mich. Mar. 24, 2011) (the denial of a prisoner's grievances was not sufficiently adverse to support a retaliation claim); *Burgos v. Canino*, 641 F. Supp. 2d 443, 454 (E.D. Pa. 2009), *aff'd*, 358 F. App'x 302 (3d Cir. 2009) (the rejection or denial of prison grievances does not constitute an adverse action for purposes of a retaliation claim). Denying a grievance could not deter a person of ordinary firmness from engaging in protected conduct because it does not have any adverse consequences. Therefore, Plaintiff fails to state a claim against Defendant Davids for First Amendment retaliation.

As to Plaintiff's claim against Defendant Santiago, Plaintiff alleges that Defendant Santiago told Plaintiff that he would make sure that Plaintiff stayed in segregation "due to a heated disagreement" over Plaintiff's placement in segregation. (ECF No. 1, PageID.4.) However, in order to state a retaliation claim, Plaintiff must show that Defendant Santiago had the ability and authority to take the alleged "adverse action" against him. *See Smith v. Campbell*, 250 F.3d 1031, 1038 (6th Cir. 2001); *Shehee v. Luttrell*, 199 F.3d 295, 300–01 (6th Cir. 1999). Here, Plaintiff alleges that he had already been placed in the Start Program at the time of Defendant Santiago's statement, and Plaintiff does not allege that he had otherwise completed the program. Indeed, Plaintiff's grievance regarding his placement in the program was denied at all stages. (ECF No. 1-1, PageID.8–11.) Plaintiff alleges that the Security Classification Committee acts as a "whole disciplinary group" to make decisions regarding Plaintiff's placement. (ECF No. 1, PageID.3; *see also* ECF No. 1-1, PageID.12.) Plaintiff's complaint does not suggest that Defendant Santiago, alone, has any authority to mandate that Plaintiff remain in segregation-like conditions under the Start Program. Accordingly, Plaintiff also fails to state a claim for First Amendment retaliation against Defendant Santiago.

### b.     Access to the Courts

It is well established that prisoners have a constitutional right of access to the courts. *Bounds v. Smith*, 430 U.S. 817, 821 (1977). The principal issue in *Bounds* was whether the states must protect the right of access to the courts by providing law libraries or alternative sources of legal information for prisoners. *Id.* at 817. The Court further noted that in addition to law libraries or alternative sources of legal knowledge, the states must provide indigent inmates with "paper and pen to draft legal documents, notarial services to authenticate them, and with stamps to mail them." *Id.* at 824–25.

An indigent prisoner's constitutional right to legal resources and materials is not, however, without limit. In order to state a viable claim for interference with his access to the courts, a plaintiff must show "actual injury." *Lewis v. Casey*, 518 U.S. 343, 349 (1996); *see also Talley-Bey v. Knebl*, 168 F.3d 884, 886 (6th Cir. 1999); *Knop*, 977 F.2d at 1000. In other words, a plaintiff must plead and demonstrate that the shortcomings in the prison legal assistance program or lack of legal materials have hindered, or are presently hindering, his efforts to pursue a nonfrivolous legal claim. *Lewis*, 518 U.S. at 351–53; *see also Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996). The Supreme Court has strictly limited the types of cases for which there may be an actual injury:

> *Bounds* does not guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims. The tools it requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement. Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration.

*Lewis*, 518 U.S. at 355. "Thus, a prisoner's right to access the courts extends to direct appeals, habeas corpus applications, and civil rights claims only." *Thaddeus-X*, 175 F.3d at 391. Moreover, the underlying action must have asserted a non-frivolous claim. *Lewis*, 518 U.S. at 353; *accord Hadix v. Johnson*, 182 F.3d 400, 405 (6th Cir. 1999) (discussing that *Lewis* changed actual injury to include requirement that action be non-frivolous).

In addition, the Supreme Court squarely has held that "the underlying cause of action . . . is an element that must be described in the complaint, just as much as allegations must describe the official acts frustrating the litigation." *Christopher v. Harbury*, 536 U.S. 403, 415 (2002) (citing *Lewis*, 518 U.S. at 353 & n.3). "Like any other element of an access claim, the underlying cause of action and its lost remedy must be addressed by allegations in the complaint sufficient to give fair notice to a defendant." *Id.* at 415.

Here, Plaintiff's complaint is devoid of any facts regarding an underlying cause of action. Notably, Plaintiff was able to file the instant lawsuit despite not having access to the law library. Accordingly, Plaintiff's First Amendment access to the courts claim will be dismissed.

### 2. Eighth Amendment Claims

Plaintiff alleges that Defendants were deliberately indifferent in placing Plaintiff in the Start Program, in violation of Plaintiff's Eighth Amendment rights. (ECF No. 1, PageID.2–3.)

The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous," nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345–46 (1981). The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600–01 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954. "Routine discomfort is 'part of the penalty that criminal offenders pay for their offenses against society.'" *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (quoting *Rhodes*, 452 U.S. at 347). As a consequence, "extreme deprivations are required to make out a conditions-of-confinement claim." *Id.* Conditions that are restrictive or even harsh, but that are not cruel and unusual under contemporary standards, are not unconstitutional. *Rhodes*, 452 U.S. at 347. Thus, federal courts may not intervene to remedy conditions that are merely unpleasant or undesirable.

In order for a prisoner to prevail on an Eighth Amendment claim, he must show that he faced a sufficiently serious risk to his health or safety and that the defendant official acted with "'deliberate indifference' to [his] health or safety." *Mingus v. Butler*, 591 F.3d 474, 479–80 (6th Cir. 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)) (applying deliberate indifference standard to medical claims); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions of confinement claims). The deliberate-indifference standard includes both objective and subjective components. *Farmer*, 511 U.S. at 834; *Helling*, 509 U.S. at 35–37. To satisfy the objective prong, an inmate must show "that he is incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834. Under the subjective prong, an official must "know[ ] of and disregard[ ] an excessive risk to inmate health or safety." *Id.* at 837. "[I]t is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." *Id.* at 842. "It is, indeed, fair to say that acting or failing to act with deliberate indifference to a substantial risk of serious harm to a prisoner is the equivalent of recklessly disregarding that risk." *Id.* at 836. "[P]rison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." *Id.* at 844.

Plaintiff alleges that his placement in the Start Program involves segregation-like conditions. However, placement in segregation, without more, is a routine discomfort that is "part of the penalty that criminal offenders pay for their offenses against society." *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (quoting *Rhodes*, 452 U.S. at 347). Although it is clear that Plaintiff was denied certain privileges as a result of his confinement in the Start Program, Plaintiff does not allege or show that he was denied basic human needs and requirements.

The Sixth Circuit has held that without a showing that basic human needs were not met, the denial of privileges as a result of administrative segregation cannot establish an Eighth Amendment violation. *See Evans v. Vinson*, 427 F. App'x 437, 443 (6th Cir. 2011); *Harden-Bey v. Rutter*, 524 F.3d 789, 795 (6th Cir. 2008). Moreover, Plaintiff cannot bring an Eighth Amendment claim for emotional or mental damages because he does not allege a physical injury. *See* 42 U. S.C. § 1997e(e); *see also Hudson*, 503 U.S. at 5; *Harden-Bey*, 524 F.3d at 795. As a result, Plaintiff fails to state an Eighth Amendment claim against Defendants.

### 3. Fourteenth Amendment Procedural Due Process Claim

Plaintiff alleges that his placement in the Start Program violates his right to procedural due process. (ECF No. 1, PageID.2.)

"The Fourteenth Amendment protects an individual from deprivation of life, liberty or property, without due process of law." *Bazzetta v. McGinnis*, 430 F.3d 795, 801 (6th Cir. 2005). To establish a Fourteenth Amendment procedural due process violation, a plaintiff must show that one of these interests is at stake. *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). Analysis of a procedural due process claim involves two steps: "[T]he first asks whether there exists a liberty or property interest which has been interfered with by the State; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient . . . ." *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989) (citations omitted).

The United States Supreme Court long has held that the Due Process Clause does not protect every change in the conditions of confinement having an impact on a prisoner. *See Meachum v. Fano*, 427 U.S. 215, 225 (1976). In *Sandin v. Conner*, the Supreme Court set forth the standard for determining when a state-created right creates a federally cognizable liberty interest protected by the Due Process Clause. 515 U.S. 472, 484 (1995). According to that Court, a prisoner is entitled to the protections of due process only when the sanction "will inevitably affect

the duration of his sentence" or when a deprivation imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.* at 486–87; *see also Jones v. Baker*, 155 F.3d 810, 812 (6th Cir. 1998); *Rimmer-Bey v. Brown*, 62 F.3d 789, 790–91 (6th Cir. 1995).

Here, Plaintiff alleges that he was involuntarily placed in ICF's Start Program. He claims that the conditions of the Start Program are similar to those of segregation, in that Plaintiff is being denied various privileges, including a television, food items from the prison store, a music player, the ability to obtain a Securepak, a job, access to the law library, J-Pay machine, and gym, freedom from handcuffs, access to a razor for shaving, and 5-7 weekly showers. (ECF No. 1, PageID.3.) Plaintiff does not allege that his placement in the Start Program will affect the duration of his sentence, and Plaintiff has failed to allege facts to suggest that the Start Program is an atypical and significant deprivation.

As an initial matter, the Supreme Court repeatedly has held that a prisoner has no constitutional right to be incarcerated in a particular facility or to be held in a specific security classification. *See Olim v. Wakinekona*, 461 U.S. 238, 245 (1983); *Moody v. Daggett*, 429 U.S. 78, 88 n.9 (1976); *Meachum*, 427 U.S. at 228–29. Furthermore, Plaintiff describes that the Start Program is conducted under segregation standards. With respect to a prisoner's detention in segregation, generally only periods of segregation lasting for a year or more have been found to be atypical and significant. *See, e.g.*, *Selby v. Caruso*, 734 F.3d 554, 559 (6th Cir. 2013) (concluding that thirteen years of segregation implicates a liberty interest); *Harris v. Caruso*, 465 F. App'x 481, 484 (6th Cir. 2012) (finding that eight years of segregation implicates a liberty interest); *Harden-Bey*, 524 F.3d at 795 (remanding to the district court to consider whether the

plaintiff's allegedly "indefinite" period of segregation, i.e., three years without an explanation from prison officials, implicates a liberty interest).

At the time that Plaintiff filed his complaint, he had been in the Start Program at ICF less than three months. Accordingly, even if Plaintiff continues to be subjected to segregation standards, Plaintiff alleges insufficient facts to suggest that his placement there is an atypical and significant deprivation. *See, e.g.*, *Jackson v. Berean*, No. 1:18-cv-1075, 2019 WL 1253196, at *11 (W.D. Mich. Mar. 19, 2019) ("[The Start program], which is less restrictive on the whole than the administrative segregation at issue in *Sandin*, necessarily falls short of an atypical and significant hardship."), *aff'd*, No. 19-1583, 2019 WL 6208147 (6th Cir. Nov. 19, 2019); *Dickerson v. Davids*, No. 1:21-cv-401, 2021 WL 3928667, at *4 (W.D. Mich. Sept. 2, 2021). Accordingly, Plaintiff fails to state a Fourteenth Amendment procedural due process claim against Defendants regarding his placement and continued participation in the Start Program.

### 4. Fourteenth Amendment Equal Protection Claims

Plaintiff alleges in a conclusory fashion that Defendants violated Plaintiff's right to equal protection. (ECF No. 1, PageID.2.) Plaintiff does not elaborate as to the nature of this claim.

The Equal Protection Clause of the Fourteenth Amendment provides that a state may not "deny to any person within its jurisdiction the equal protection of the laws," which is essentially a direction that all persons similarly situated should be treated alike. U.S. CONST., amend. XIV; *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). To state an equal protection claim, Plaintiff must show "intentional and arbitrary discrimination" by the state; that is, he must show that he "has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000). The threshold element of an equal protection claim is disparate treatment. *Scarbrough v. Morgan Cnty. Bd. of Educ.*, 470 F.3d 250, 260 (6th Cir. 2006). Further, "'[s]imilarly situated' is a

term of art—a comparator . . . must be similar in 'all relevant respects.'" *Paterek v. Vill. of Armada*, 801 F.3d 630, 650 (6th Cir. 2015) (quoting *United States v. Green*, 654 F.3d 637, 651 (6th Cir. 2011)).

Here, Plaintiff has not alleged facts that would plausibly suggest that Plaintiff was treated differently than any similarly situated prisoner. His conclusory allegations of unconstitutional conduct without specific factual allegations fail to state a claim under § 1983. *See Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555. Accordingly, the Court will dismiss Plaintiff's Fourteenth Amendment equal protection claims.

### B. ADA Claims

Finally, Plaintiff alleges that Defendants' placement of Plaintiff in the Start Program violated Plaintiff's rights under the ADA. (ECF No. 1, PageID.2.)

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. In the ADA, the term "disability" is defined as follows: "[1] a physical or mental impairment that substantially limits one or more of the major life activities of such individual; [2] a record of such an impairment; or [3] being regarded as having such an impairment." *Id.* § 12102(2).

The Supreme Court has held that Title II of the ADA applies to state prisons and inmates. *Penn. Dep't of Corr. v. Yeskey*, 524 U.S. 206, 210–12 (1998). The proper defendant for Title II ADA claims is the public entity or an official acting in his official capacity. *Carten v. Kent State Univ.*, 282 F.3d 391, 396–97 (6th Cir. 2002); *see, e.g.*, *Tanney v. Boles*, 400 F. Supp. 2d 1027, 1044 (E.D. Mich. 2005) (citations omitted). Plaintiff sues Defendants in their official and individual capacities. Because Plaintiff may not pursue ADA claims against Defendants in their

individual capacities, any intended ADA claims against Defendants in their individual capacities will be dismissed.

As to Plaintiff's official capacity ADA claims, the State of Michigan (acting through the MDOC) is not necessarily immune from Plaintiff's claims under the ADA. *See, e.g.*, *Tanney*, 400 F. Supp. 2d at 1044–47. The ADA "validly abrogates state sovereign immunity" for "conduct that *actually* violates the Fourteenth Amendment[.]" *United States v. Georgia*, 546 U.S. 151, 159 (2006). If conduct violates the ADA but not the Fourteenth Amendment, then the Court must determine whether the ADA validly abrogates state sovereign immunity. *Id.* At this stage of the proceedings, the Court will presume that the ADA validly abrogates state sovereign immunity for Plaintiff's ADA claims.

Turning to the merits of Plaintiff's ADA claims against Defendants in their official capacities, Plaintiff alleges that he suffers from a "major mental illness disorder" and that inmates suffering from mental illness, including himself, are involuntarily held in the Start Program. (ECF No. 1, PageID.3.) Plaintiff included with his complaint an explanation of the Start Program, which indicates that the program is "designed to treat prisoners with behavioral disorders and associated behavioral problems." (ECF No 1-1, PageID.13.)

As the United States Court of Appeals for the Second Circuit has explained, "[w]here the handicapping condition is related to the condition(s) to be treated, it will rarely, if ever, be possible to say . . . that a particular decision was 'discriminatory.'" *United States v. Univ. Hosp.*, 729 F.2d 144, 157 (2d Cir. 1984). Indeed, that distinction explains why the ADA is not an appropriate federal cause of action to challenge the sufficiency of medical or mental health treatment. *See, e.g.*, *Baldridge-El v. Gundy*, No. 99-2387, 2000 WL 1721014, at *2 (6th Cir. Nov. 8, 2000) ("[N]either the RA nor the ADA provide a cause of action for medical malpractice."); *Centaurs v. Haslam*,

15

No. 14-5348, 2014 WL 12972238, at *1 (6th Cir. Oct. 2, 2014) ("Although [Plaintiff] may have a viable civil rights claim under 42 U.S.C. § 1983 for inadequate medical care, he has failed to state a prima facie case under the parameters of the ADA."); *Powell v. Columbus Med. Enterprises, LLC*, No. 21-3351, 2021 WL 8053886, at *2 (6th Cir. Dec. 13, 2021) ("This dissatisfaction necessarily sounds in medical malpractice, which, 'by itself, does not state a claim under the ADA.'").

Plaintiff fails to show that Defendants excluded Plaintiff from a service or program, denied Plaintiff an accommodation, or discriminated against Plaintiff due to his disability. Plaintiff's conclusory allegations of an ADA violation without specific supporting factual allegations fail to state a claim. *See Iqbal*, 556 U.S. at 678–79; *Twombly*, 550 U.S. at 555. For these reasons, Plaintiff's ADA claims will be dismissed.

        **C.**        **Claims Regarding Alleged Embezzlement of Government Funds**

Plaintiff contends that the Start Program is being used "as a means to steal money from the government." (*Id.*, PageID.4). To the extent that Plaintiff intended to bring an "embezzlement claim" against Defendants, embezzlement is a crime under federal or state law and is not a private cause of action. *Cf. Ticor Title Ins. Co. v. Nat'l Abstract Agency, Inc.*, No. 05-CV-73709-DT, 2007 WL 2710113, at *10 (E.D. Mich. Sept. 13, 2007) (discussing that although "in certain circumstances, [courts may] infer a private cause of action, where there is a bare criminal statute, with no indication that civil enforcement is available, a private cause of action will not be inferred" and concluding that a claim for embezzlement alleges "violation of [a] purely criminal statute[]" (citations omitted)); *Stern v. Epps*, 464 F. App'x 388, 393 (5th Cir. 2012) ("Embezzlement and money laundering are crimes under Mississippi law, not private causes of action." (citations omitted)). Accordingly, any intended "embezzlement claims" will be dismissed.

**Conclusion**

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's complaint will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). Although the Court concludes that Plaintiff's claims are properly dismissed, the Court does not conclude that any issue Plaintiff might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962). Accordingly, the Court does not certify that an appeal would not be taken in good faith. Should Plaintiff appeal this decision, the Court will assess the $605.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610–11, unless Plaintiff is barred from proceeding *in forma pauperis*, *e.g.*, by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $605.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A judgment consistent with this opinion will be entered.


Dated:      July 2, 2024                             /s/ Jane M. Beckering
                                                     Jane M. Beckering
                                                     United States District Judge